UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-cv-23300-UU

PATRICE BAKER and
LAURENT LAMOTHE

      Plaintiffs,

v.

LEO JOSEPH,

      Defendant.
_____/

## ORDER ON MOTION

THIS CAUSE is before the Court upon Defendant's Motion to Set Aside Entry of Default and Default Judgment. D.E. 34.

THE COURT has considered the Motion, the pertinent portions of the record, and is otherwise fully advised in the premises.

I. BACKGROUND

In their operative complaint, filed on September 12, 2012, Plaintiffs Patrice Baker, a "prominent businessman" in South Florida, and Laurent Lamonthe, the Prime Minister of Haiti, allege that Defendant Leo Joseph published defamatory statements about them in multiple news articles that appeared in a printed periodical and on an Internet website.[1] D.E. 4. On January 16, 2013, the Clerk of the Court entered a default against Defendant for failure to appear, answer or otherwise plead to the complaint within the time required by law. D.E. 23. On February 6, 2013, upon Plaintiffs' motion, the Court entered a final default judgment against Defendant. D.E. 32. On March 4, 2013, Defendant moved

---

[1] Initially, Plaintiffs named Haiti-Observateur Group (HOG), "an unknown business entity and the alter ego of Defendant Leo Joseph", D.E. 4 ¶ 3, but later dismissed this Defendant. D.E. 26–27.

to set aside the entry of default and default judgment. D.E. 34.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 55(c), a clerk's entry of default may be set aside upon the showing of good cause. But when a default judgment has been entered, Rule 55(c) refers to Rule 60(b), which sets forth six grounds upon which relief may be granted. Here, Defendant seeks relief under subsections (1), (4), and (6) of Rule 60(b). Rule 60(b)(1) provides that relief may be provided where there was "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(4) applies where "the judgment is void." Rule 60(b)(6) may be invoked for "any other reason that justifies relief."

## III. DISCUSSION

Although Defendant's motion begins by seeking relief from the restraint on speech and the finding of actual malice in the default final judgment, the Court will first address Defendant's argument that the default and the default judgment should be set aside under Federal Rule of Civil Procedure 60(b)(4) as void due to insufficient service of process. Accepting Defendant's argument that service was insufficient would require this Court to vacate the entry of default against Defendant. *See Varnes v. Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1371 (11th Cir. 1982) (finding no service and vacating default against defendant on Rule 60(b)(4) motion). Accordingly, the Court evaluates whether the service of process against Defendant was sufficient (to determine whether the default is valid) before considering whether the Court erred in entering the challenged sections of the default judgment.

**A. Void Judgment – Insufficient Service**

Defendant bears the burden of proving that service of process was insufficient. *In re: Worldwide Web Systems, Inc*. 328 F.3d at 1299 (11th Cir. 2003) (holding that defendant has the burden of proof in a Rule 60(b)(4) motion), citing *Hazen Research, Inc. v. Omega Minerals, Inc.*, 497 F.2d 151, 154 (5th Cir.

1974 )).[2] Here, the process server attempted to serve Defendant by affixing a copy of the process to a door at Defendant's home in Jamaica, New York, then mailing a copy of the process that address. D.E. 17-1[3]. This method of service – often referred to as the "nail and mail" method of service – is recognized under New York law and therefore permissible under Federal Rule of Civil Procedure 4(e)(1) (providing that service may be made in accordance with the laws of the state in which service is made).[4] New York law permits the nail and mail method only after personal or specified substitute service could not be accomplished despite "due diligence." N.Y. C.P.L.R. § 308(a)(4). Specified substitute service entails delivering process to a person of "suitable age and discretion" at defendant's place of business, dwelling place, or usual place of abode, then mailing a copy of the process to defendant. N.Y. C.P.L.R. § 308(a)(2). The Court of Appeals for the Second Circuit holds that although there are "no rigid rules" in this context, case law indicates that "more than two attempts, including some that are during non-business hours, constitutes due diligence." *SEC v. Reynolds*, 1996 U.S. App. LEXIS 27423 (2d Cir.1996).

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[3] The record contains two affidavits of service: D.E. 17-1, filed on December 10, 2012, and D.E. 38-1, filed on March 11, 2013. In the second affidavit of service, a different process server than the one who swore to the first affidavit, attested that after attempting, unsuccessfully, to serve Defendant at his home on three occasions between December 31, 2012, and January 3, 2013, he mailed a copy of the process to Defendant's home address on January 4, 2013. D.E. 38-1. Plaintiffs do not rely upon the second affidavit in their response to the Defendant's motion. Furthermore, the default entered against the Defendant was premised on the first affidavit of service. Plaintiffs' motion for entry of clerks default stated that Defendant was in default for failing to file a response by December 24, 2012, prior to the first service attempt detailed in the second affidavit. D.E. 22. Because only the first affidavit of service is relevant to the default, the Court need not consider the second affidavit for the purposes of determining whether the judgment against Defendant is void under Rule 60(b)(4).

[4] Rule 4(e)(1) also permits service to be made in accordance with the law of the state where the suit is proceeding. However, Florida does not permit the "nail and mail" method of service. See Fla. Stat. §§ 48.031, 48.161, 48.193(3), 48.194(1); *Reef Clematis LLC v. Reef and Fum Bar Group LLC*, 2009 WL 5217077 at *1 (S.D. Fla. 2009) (listing ways in which Florida law permits service to be made on an individual). The "nail and mail" method is not among the methods of service specifically authorized under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. Pr. 4(e)(2).

Defendant argues that Plaintiffs did not exhibit "due diligence" in attempting to serve him personally or by substitute service prior to affixing the process on the door of Defendant's home. According to an affidavit of service that Plaintiffs filed on December 10, 2012, D.E. 17-1, the process server affixed the process on Defendant's door on December 1, 2012, during his first visit to Defendant's home. Next to the space reserved for a list of prior service attempts, the process server wrote "n/a." *Id*. Although the process server did not detail service attempts prior to December 1, 2012, he did indicate that he attempted on that day to execute substitute service on a person named John McCoy, who refused to accept process. *Id*. The affidavit further described McCoy as an African-American male with black hair, aged 60–65, with an approximate height of 5'4–5'7 and an approximate weight of 130–160 pounds. However, in support of his motion, Defendant submits an affidavit in which he calls into question that McCoy was at Defendant's "actual ... dwelling place," and therefore an appropriate person for substitute service under N.Y. C.P.L.R. § 308(a)(2). Defendant attests that he does not know anyone named John McCoy, nor does anyone by McCoy's name or physical description live at or have access to his home. D,E, 34-1 ¶¶ 5–6. Defendant also claims that he does not fit McCoy's description, describing himself as a 74 year-old, 5'9, "black man with gray hair," weighing 170 pounds. *Id*. ¶ 9.

In response, Plaintiffs make many factual assertions which are unsupported by any record evidence. For example, Plaintiffs claim that their process server made more than one attempt at serving Defendant and that McCoy was, in actuality, the Defendant himself, but submit no proof to support either of these assertions. As to the first claim, Plaintiffs contend that a first attempt to serve Defendant at his home was made on November 30, 2012, but no one was present. D.E. 43 at 5. However, not only is there no supporting evidence for this assertion, it actually is contradicted by the affidavit submitted by

4

the process server, who indicated that service attempts prior to December 1, 2012, were "n/a." D.E. 17-1. As to Plaintiffs' assertion that prior to visiting Defendant's home, the process server had been furnished a photo of Defendant and that he identified McCoy as Defendant, it is likewise not substantiated in the process server's affidavit or elsewhere in the record. And Plaintiffs do not present any evidence rebutting the differences between Defendant's description of himself and the process server's description of John McCoy. Plaintiffs claim, without supplying any evidence, that on December 1, 2012, McCoy "answered the door at Defendant's home." D.E. 43 at 5. However, the process server's affidavit is entirely silent on where the alleged exchange with McCoy occurred. *See* D.E. 17-1. The affidavit does not indicate that McCoy was present inside Defendant's home or anywhere on Defendant's property. *Id*. In addition, Plaintiffs assert that the individual who allegedly answered the door "identified himself as John McCoy, a tenant of the residence." D.E. 43 at 5. In support of this claim, Plaintiffs cite "Supp. Aff. of Mladinich," *id*., but there is no document anywhere in the record that conforms to this description. Finally, Plaintiffs assert that Defendant knew of the lawsuit because he was quoted in a news article as stating he thought the lawsuit was "a joke." 43-6. But the newspaper article from which Plaintiffs cite is inadmissible hearsay evidence. *See* Fed. R. Evid. 801–2. And even if the Court were to consider the newspaper article, the portion cited by Plaintiffs does not prove that service was sufficient, only that Defendant was dismissive of the lawsuit once he became aware of it. Elsewhere in the same newspaper article, Defendant is reported to have said that he was not properly served with the paperwork notifying him of the litigation. D.E. 43-1. In sum, Defendant has demonstrated amply that service was insufficient and Plaintiffs have submitted no proof of their claims to the contrary. Accordingly, the Court grants Defendant's motion and hereby vacates the default and default judgment against Defendant.

### B. Misapplication of the Law – Actual Malice

In the interests of judicial economy, the Court addresses here Defendant's argument that the complaint's allegation as to "actual malice" is not well-pleaded. Actual malice, a necessary element in libel actions against public figures, requires that "the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz v. Robert Welch*, 418 U.S. 323, 342 (1974). Here, the operative complaint asserts only that "Defendants statements were made with actual malice." This statement is a legal conclusion and, as such, does not satisfy the well-pleaded allegation requirement set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2209) (holding that a plaintiff's grounds for relief must be based on factual allegations, not a formulaic recitation of the elements of a cause of action); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 667–80 (2009) (quoting and citing *Twombly*); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (quoting and citing *Iqbal*). In reaching this conclusion, the Court declines to follow *Levy v. Steven A. Lerman & Associates*, *Inc.*, 2011 U.S. Dist. LEXIS 79560 (S.D. Fla. 2011), the unpublished district court opinion cited by Plaintiffs, in which the court held that actual malice is properly pled when the complaint lists the defamatory statements and then alleges that the statements were made with knowledge of their falsity or with reckless disregard for the truth. Inasmuch as *Levy* holds that a plaintiff can plead actual malice without alleging facts substantiating defendant's knowledge of the falsity of the challenged statements or defendant's reckless disregard for the truth, the holding is at odds with *Twombly* and *Iqbal*. Finally, Plaintiff's reliance on *Dubai World Corp. v. Exomos*, 2011 U.S. Dist. LEXIS 12554 (S.D. Fla. 2011) is unavailing because the cited holding concerns the presumption of injury where the challenged statement maligns the claimant's professional competence, not the requirements for pleading actual malice. *See id.* at *47. Because Plaintiffs have failed to properly plead actual malice, they shall file a second amended

complaint, setting forth the facts that support this allegation, no later than April 19, 2013.

### C. Misapplication of the Law – Unconstitutional Prior Restraint

The final issue that Defendant raises is that the injunctive relief granted in default final judgment amounted to an unconstitutional prior restraint. First, the Court notes that the operative complaint did not ask for an injunction and it should not have been entered for that reason. Second, the Court cautions Plaintiffs that prior restraints on speech are disfavored. *See, e.g., Community for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987) ("The usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages"). And in the present case, Plaintiffs sought to enjoin more than just libelous or slanderous speech. The default final judgment permanently restrained Defendant from publishing any "future communications" regarding the Plaintiffs "in either their professional, personal, or political lives." D.E. 32 ¶ 6. Judgments that enjoin the publication of non-defamatory statements are invalid. *Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963) (holding that injunction directed to "any" statements violated First Amendment), cert. denied, 373 U.S. 911 (1963). Finally, the cases that Plaintiffs cite to support the proposition that prior restraints on speech are proper under Florida law are inapposite because the defamation in those cases was considered by the courts to be incidental to a tortious interference in a business relationship. *See Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So. 2d 1371, 1376 (Fla. Dist. Ct. App. 1987) ("We approve the trial court's finding that some of the activities enjoined constitute or are incident to conduct which constitutes intentional interference with potentially advantageous business relationships, and that the rights thus tortuously violated are entitled to be protected by equitable intervention in the form of a temporary injunction."); *Murtagh v. Hurley*, 40 So.3d 62, 67 (Fla. Dist. Ct. App. 2010) (denying injunctive relief where plaintiff failed to present evidence that demonstrated or allowed an inference that

defendant's conduct "had a deleterious effect on" plaintiff's business).  In sum, because of the well-settled rule prohibiting injunctive relief in defamation cases, Plaintiffs must include specific facts which would warrant such extraordinary relief should they seek injunctive relief in the second amended complaint.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED AND ADJUDGED that Defendant's Motion is GRANTED. It is further ORDERED AND ADJUDGED that

(1) D.E. 23 and D.E. 31 are VACATED;

(2) The Clerk of the Court shall administratively re-open the present case. D.E. 32 is VACATED;

(3) Plaintiffs shall file a second amended complaint, alleging facts that support its allegation actual malice, no later than April 19, 2013.

DONE AND ORDERED in Chambers, Miami, Florida, this 9thday of April, 2013.

_____
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record

8