UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-23300-CIV-UNGARO

LAURENT LAMOTHE
and PATRICE BAKER,

     Plaintiffs,

vs.

LEO JOSEPH,

     Defendant.

_____/

## <u>DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT</u>

HOLLAND & KNIGHT LLP
Attorneys for Defendant
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)
Sanford L. Bohrer
Scott D. Ponce
Jonathan D. Stratton
Pedro Gassant
Eric B. Funt

Defendant, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves for the entry of an Order dismissing with prejudice the Third Amended Complaint (the "TAC") [DE 62] because it fails to state a claim.  The grounds for this Motion are:

## I.     INTRODUCTION

### A.     Factual Background.

Plaintiff Lamothe is the Prime Minister of Haiti (TAC, ¶8).  Plaintiff Baker is a "prominent businessman" in South Florida, who is known and recognized throughout the community (*Id.*, ¶7).  Defendant, a resident of New York, is a journalist and operator of a newspaper and Internet website that publishes news relating to Haiti (*Id.*, ¶¶3, 9-12).

The TAC purports to be premised upon a total of eleven statements contained in four newspaper and Internet articles published by Defendant (*Id.*, ¶¶13-15, 17).  Copies of those articles and, where applicable, the English translations are attached to the TAC as Exhibits A through D [DE 62-1 through 62-4].  The TAC purports to state a single claim under Florida law for defamation based upon the eleven statements contained in those articles.[1]

### B.     Relevant Procedural History.

By Order dated May 30, 2013 (the "Order") [DE 61], the Court dismissed without prejudice Plaintiffs' second amended complaint (the "SAC") [DE 53] and gave Plaintiffs leave to file a third amended complaint, but ***limited*** such leave to attempting to cure the defects identified in the Order (Order, p. 9).  Specifically, Plaintiffs were granted leave to amend in order to: (1) identify the specific statements upon which they are suing and attach copies of the articles containing those statements, and (2) provide a more definite statement – or further factual enhancement – relating to their allegation that "Defendant also has knowledge of the falsity of

---

[1] Plaintiffs have dropped the claim for "tortious interference with advantageous relationships" that was contained in the second amended complaint.

the statements by way of his relationship, that being of a business nature and/or creditor/debtor with the majority owner of Haitel" (Order, pp. 3, 5, 8).

As to the first defect, Plaintiffs say their defamation claim is premised upon eleven statements contained in articles that were published on August 15, 2012, August 29, 2012, September 5, 2012, and January 16, 2013 (*Id.*, ¶¶13-15, 17).[2]   The TAC quotes a handful of words from a few of the statements, but otherwise paraphrases (and loosely, at that) the statements upon which Plaintiffs are suing (*Id.*, ¶17).   The articles are attached to the TAC as Exhibits A through D.

As to the second defect, Plaintiffs allege that Defendant published the statements with actual knowledge of their alleged falsity because:

18. Defendant has knowledge that the above-referenced statements are false and acknowledged their falsity during a teleconference with various third-parties at or around the time that this action was first filed.   Defendant's knowledge as to the falsity of the statements comes, in part, from his relationship, that being of a business nature and/or creditor/debtor, with Franck Cine, majority shareholder of Haitel.[3]

19. Defendant has acknowledged that his false statements were made as a result or in part satisfaction of the outstanding debt between himself and Franck Cine.

20. Defendant has acted with actual malice by utilizing his publication to publish statements which benefit him and his business partners/creditors while having knowledge as to their falsity.

The TAC should be dismissed with prejudice because Plaintiffs still have failed to state a claim for defamation.

---

[2] Paragraph 15 of the TAC refers to an article that was published on April 17, 2013, but that article is not attached to the TAC and paragraph 17 of the TAC does not identify any statements contained in an April 17 article.

[3] Apart from identifying Franck Cine as the majority shareholder of Haitel, the second sentence of this paragraph is no different that the allegation contained in paragraph 19 of the second amended complaint.

2

## II.    ARGUMENT

### A.    PLAINTIFFS HAVE EXCEEDED THE SCOPE OF THE LEAVE THEY WERE GIVEN.

Paragraph 17 of the SAC contained what appeared to be a summary of the statements upon which Plaintiffs were attempting to sue.  The Court dismissed the SAC without prejudice because, among other reasons, Plaintiffs did not identify the specific statements upon which they were suing.  The Court was clear in saying that Plaintiffs could amend in this regard *only* in order to specifically identify the statements that they had summarized in the TAC and attach the articles.

Paragraph 17 of the TAC is Plaintiffs' attempt to amend.  Contrary to the Court's Order – and perhaps because the Court advised Plaintiffs that some of the statements in the SAC, "albeit in summarized form, are not clearly defamatory" – paragraph 17 of the TAC is premised almost entirely upon statements that are different than the ones summarized in the SAC.  Comparing paragraph 17 of each pleading makes clear that instead of limiting the TAC to specifically identifying the statements summarized in the SAC, Plaintiffs have identified completely new statements.[4]  That is beyond the scope of the leave they were granted and, as such, the TAC should be dismissed with prejudice to the extent Plaintiffs exceeded the leave they were granted.

### B.    PLAINTIFFS DID NOT SATISFY THE STATUTORY CONDITION PRECEDENT TO LITIGATION FOR THREE ARTICLES.

According to paragraph 17 of the TAC, Plaintiffs' defamation claim is premised upon eleven statements contained in articles that were published on August 15, 2012, August 29, 2012, September 5, 2012, and January 16, 2013 (TAC, ¶¶13-15, 17, Exs. A-D).  The TAC should be

---

[4] Paragraph 17(b) of the TAC corresponds with 17(b) of SAC; 17(c) of the TAC corresponds with 17(e) of the SAC; 17(f) of the TAC corresponds with 17(i) of the SAC; and 17(g) of the TAC corresponds with 17(k) of the SAC.  The remaining subparagraphs in paragraph 17 of the TAC do not correspond with anything in paragraph 17 of the SAC.

dismissed to the extent it is premised upon the August 29, September, and January articles because Plaintiffs did not satisfy the statutory condition precedent to suing on statements contained those articles.

Section 770.01, Florida Statutes contains a condition precedent to asserting a claim for defamation.  It requires a plaintiff to give the publisher, before filing suit, written notice "specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory" (emphasis added).[5]  "Failure to comply with the notice provision of section 770.01 requires dismissal of the complaint for failure to state a cause of action."  *See Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So.2d 1376, 1377 (Fla. 4th DCA 1997); *see also Nelson v. Associated Press, Inc.*, 667 F.Supp. 1468, 1474-75 (S.D. Fla. 1987) ("Having failed to comply with §770.01, Plaintiff's claim against AP must fail, since the statute is a condition precedent to her maintaining the suit.").

Plaintiffs allege that they "issued a demand for retraction" before filing suit (TAC, ¶¶24, 26).  A copy of the retraction demand is attached to this Motion as Exhibit 1.[6]  The only article identified in that letter is the August 15 article; the letter does not identify, or even mention, the August 29, September, and January articles.  As such, the TAC should be dismissed to the extent it purports to be premised upon the August 29, September, and January articles, and the dismissal should be with prejudice because the TAC is Plaintiffs' fourth attempt to state a claim for

---

[5] It is not enough that a §770 notice merely identify the article.  Instead, and as the statute expressly states, the notice must also specifically identify the allegedly false and defamatory statements contained in the article.  *See, e.g., Gannett Florida Corp. v. Montesano*, 308 So.2d 599, 599-600 (Fla. 1st DCA 1975) (finding 770 notice defective because although it identified the articles, it did not identify the specific statements alleged to be defamatory).

[6] The Court may consider the retraction demand even though it was not attached to the TAC because it is expressly referred to in the TAC, is central to Plaintiffs' claim, and Plaintiffs cannot challenge the authenticity of the document.  *See, e.g., Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley*, 304 F.3d at 1134).

defamation.  Dismissal on this basis disposes of Plaintiff Baker's claim, in its entirety, because the *only* allegedly false and defamatory statements relating to him are contained in the August 29, September, and January articles (TAC, ¶17(d), (e), (h), and (i)).

## C.    THE STATEMENTS ARE NOT ACTIONABLE AS DEFAMATION.

Paragraph 17 of the TAC purports to specifically identify the statements upon which Plaintiffs are suing and the articles in which the statements appeared.  Putting aside the fact that, as discussed above, Plaintiffs have exceeded the scope of the leave they were granted and, additionally, cannot assert claims based upon statements contained in the August 29, September, and January articles, none of the eleven statements is actionable as defamation.

### 1.    Paragraph 17(a).

This paragraph alleges that the August 15 article [DE 62-1] contains a statement that "Plaintiff Lamothe has acted improperly by leading efforts to expedite the process for the sale of the telecommunications company, Haitel."  No such statement appears in the article.  Not even the retraction demand (Ex. 1) identifies that statement.  The allegation in paragraph 17(a) does not state a claim for defamation because it does not identify a statement published by Defendant.

### 2.    Paragraph 17(b).

This paragraph alleges that the August 15 article contains the "false statement that Nord Citadel Capital, LLC, in association with the Haitian State (led by Lamothe), agreed to set the sale of Haitel as 25 million dollars, despite its hardware and software assets being valued at approximately 80 million dollars" (parenthetical in original) (emphasis added).  The actual statement does not say that Plaintiff Lamothe led anything.  Instead, it says:

> During the negotiations concerning the sale of Haitel, the parties involved, the Haitian State, on the one hand, and the company "Nord Citadel Capital LLC," on the other, agreed to set the price of the Cine family's company at 25 million dollars.  That amounts to a pittance when we know that, based on the information available from the owners of

Haitel, the cost of the equipment alone, excluding the real estate, is around 80 million dollars.

The fact that the actual statement does not mention Plaintiff Lamothe is crucial because, to be actionable as defamation, the challenged statement must be "concerning" or "about" the plaintiff.  *See, e.g., Valencia v. Citibank International*, 728 So.2d 330, 330 (Fla. 3d DCA 1999); *Mile Marker, Inc. v. Petersen Publishing, LLC*, 811 So.2d 841, 845 (Fla. 4th DCA 2002). Plaintiffs' attempt to edit the statement to insert a reference to Plaintiff Lamothe is unavailing.

This statement is non-actionable for the additional reason that – even if it were concerning or about Plaintiff Lamothe – Plaintiffs have not alleged *what* they claim to be a false statement of fact. *See Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983) ("A false statement of fact is the *sine qua non* for recovery in a defamation action.").  Are Plaintiffs claiming that the sale price of Haitel was not set at $25 million?  Or are they claiming that the value of Haitel's assets, excluding the real property, is not approximately $80 million? Plaintiffs failed to meet their burden to allege facts relating to the supposed falsity.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

Additionally – and, again, assuming that the statement were concerning or about Plaintiff Lamothe – there are no factual allegations as to what is defamatory about a statement that the asking/sales price undervalued the company's assets.  *See Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1114-15 (Fla. 2008) (to be defamatory, a statement must tend to prejudice the plaintiff in the eyes of a "substantial and respectable minority" of the community).

Finally, the statement that the $25 million asking/sales price was "a pittance" in light of the owner's information that the value of the company's assets, excluding real property, was approximately $80 million is not actionable because it is pure opinion.  "Pure opinion occurs

when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public." *See Miami Child's World, Inc. v. Sunbeam Television Corp.*, 669 So.2d 336, 336-37 (Fla. 3d DCA 1996) (alterations in original) (internal quotation marks omitted); *see also Lipsig v. Ramlawi*, 760 So.2d 170, 184 (Fla. 3d DCA 2000). This passage contained an opinion that was based on facts disclosed in the same passage and, as such, is non-actionable pure opinion.

Paragraph 17(b) does not state a claim for defamation.

### 3.      Paragraph 17(c).

This paragraph alleges that the August 15 article contains a statement that "<u>Lamothe</u> transformed the Haitain consulate in New York into an operations center for the sale of Haitel" (emphasis added). The actual statement does not say that. Instead, it says:

> In the context of this case, the Haitian consulate in New York has been transformed into an operations center for the "sale" of Franck Cine's company, while the consul general, Charles Forbin, former representative of "No Pin," a phone card company co-owned by Laurent Lamothe, Michel Martelly and Patrice Baker (a Haitian business man named vice consul in [illegible] by Laurent Lamothe) was assigned the role of finder or broker. (parenthetical and brackets in original).

Contrary to what Plaintiffs wrote in the TAC, this statement does not say that Plaintiff Lamothe turned the consulate into an operations center. The only thing it says about Plaintiff Lamothe is that he co-owned a company with the consul general, but Plaintiffs do not allege that is false or defamatory. This statement is not actionable as defamation because it is not "about" or "concerning" Plaintiff Lamothe. *See, e.g., Valencia*, 728 So.2d at 330; *Mile Marker*, 811 So.2d at 845.

This paragraph fails for the additional and independent reason that saying the consulate was turned into an operations center is not actionable as defamation because it "cannot 'reasonably [be] interpreted as stating actual facts'" – no one would reasonably believe that the

consulate was actually turned into a sales center.  *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (quoting *Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988)).    It is, instead, an example of rhetorical hyperbole, the protection of which "provides assurance that public debate will not suffer for lack of imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of our Nation."  *See id.*; *see also Pullum v. Johnson*, 647 So.2d 254, 257-58 (Fla. 1st DCA 1994).   Paragraph 17(c) does not state a claim for defamation.

### 4.      Paragraph 17(d).

This paragraph alleges that the August 29 article [DE 62-2] contains "the false and defamatory statement that Baker acted unlawfully when Franck Cine was removed as chairman of Global Voice."  No such statement appears in the article.  The allegation in paragraph 17(d) does not state a claim for defamation because it does not identify a statement published by Defendant.

### 5.      Paragraph 17(e).

The footnote to this paragraph identifies the following statement from the August 29 article:  "We are also unclear about the role assigned to Global Voice, Lamothe's company with Patrice Baker and Michel Martelly."  Plaintiffs allege this statement "impli[es] that Baker (through his company Global Voice) procured the agreement between SOWCI and Teleco – effectively terminating Haitel's business with the Haitian government."  This allegation fails for two reasons.

First, the statement "We are also unclear about the role assigned to Global Voice, Lamothe's company with Patrice Baker and Michel Martelly," does *not* imply "that Baker (through his company Global Voice) procured the agreement between SOWCI and Teleco – effectively terminating Haitel's business with the Haitian government."

Second, although Florida recognizes a cause of action for defamation by implication, *see Jews for Jesus*, 997 So.2d at 1108, Plaintiffs have not pleaded the elements of the claim. Defamation by implication exists where a plaintiff alleges that "literally true statements are conveyed in such a way as to create a false impression," or where the details of a statement are correct, but the gist is incorrect. *See id.* Thus, to assert a claim for defamation by implication – and putting aside the fact that Plaintiffs did not serve a §770 notice relating to such a claim[7] – Plaintiffs were required to allege that Defendant's facts are correct, but give rise to a false implication. *Nowhere* in the TAC, however, do Plaintiffs allege that any of the facts reported in the article are correct. Paragraph 17(e) does not state a claim for defamation by implication.

**6.      Paragraph 17(f).**

This paragraph alleges that the August 15 article [DE 62-1] contains the "false and defamatory statement that Lamothe fixed the price of the sale of Haitel and will benefit in the form of '[giving] himself the lion's share' of the proceeds" (brackets in original). The actual and complete statement in the article is:

> Laurent Lamothe, the big shot in the efforts to sell Haitel, divided up the sum to be collected from the transaction as if Franck Cine's company belonged to him. In effect, since his name begins with the letter L, he gave himself the lion's share. That is, an initial amount of 5 million dollars, plus 6 million dollars per year for the next five years. In case of a future conversion into an IPO, an additional amount of 25 million will go to him. According to the formula concocted by Lamothe, the Haitian State will be entitled to 10% of the sales price, or 2.5 million dollars. For the Cine family, Laurent Lamothe plans a single payment of 5% of the sale price. That means 1.25 million for the true owners of Haitel.

At the outset, it is important to note what this passage does *not* say. It does *not* report that Haitel was sold. It does *not* report that Plaintiff Lamothe received any money from a sale of Haitel. Indeed, the third-to-last and penultimate paragraphs of the article report that the potential

---

[7] The condition precedent to litigation set out in §770.01 applies to claims for defamation by implication. *See Jews for Jesus*, 997 So.2d at 1112.

buyers of Haitel came to learn that the then-existing circumstances made a sale "impossible." So, there is no basis for any suggestion by Plaintiffs that this passage reports that Plaintiff Lamothe (or anyone else) received any money in connection with a sale of Haitel.

With respect to what this passage does say, Plaintiffs do not identify *what* they claim to be a false statement of fact. *See Byrd*, 433 So.2d at 595. Are they claiming that Plaintiff Lamothe had not determined how the proceeds of a potential sale of Haitel might be distributed? Or that he made such a determination, but the percentages and amounts stated in the passage are incorrect? Or that the Cine family was not the true owners of Haitel? Plaintiffs are required to plead facts as to why the statement is false. *See Iqbal*, 556 U.S. 678; *Twombly*, 550 U.S. at 557, 570; *Mamani*, 654 F.3d at 1153. Paragraph 17(f) does not state a claim for defamation because Plaintiffs have not identified the allegedly false statement of fact.

Additionally, and putting aside the fact that the article reported that Haitel was not sold – which means no one received any money from a sale of the company – Plaintiffs do not allege what is defamatory about a statement that a distribution plan for the sale proceeds had been created and that Plaintiff Lamothe would have received the most money. *See Jews for Jesus*, 997 So.2d at 1114-15. Plaintiffs do not allege that there was a law or some other prohibition against the creation of a distribution plan or Plaintiff Lamothe participating in the plan. The TAC simply does not contain any factual allegations about why the passage is defamatory. Paragraph 17(f) does not state a claim for defamation because the challenged statement is not defamatory.

**7.     Paragraph 17(g).**

This paragraph alleges that the August 15 article contains the "false and defamatory statement that 'Lamothe and his men forced representatives of [Nord Citadel Capital LLC] to pay hundreds of millions of dollars'" (brackets in original). The actual and complete statement in the article is:

> The fragility of the political destiny of the men in power in Haiti is of the greatest concern to Laurent Lamothe, who is moving heaven and earth to finalize the matter quickly.  This is why Nord Citadel is the object of constant pressure to pay a substantial amount of the sale price as a down payment.
>
> Justifying the need to make various payments, Lamothe and his men forced the representatives of the buyer to pay hundreds of millions of dollars.  However, Laurent Lamothe persisted in demanding more.  Through his brokers, the Prime Minister even allegedly proposed to Nord Citadel including a credit card "available to the government" in order to facilitate the transactions.
>
> Additionally, he asked Nord Citadel to open an escrow account in Haiti for an amount in the neighborhood of 10 million dollars.  The opening of this type of account would clearly demonstrate that the buyer is truly interested in completing the transaction.

This passage reports the negotiations regarding the down payment that would be paid by the would-be purchaser of Haitel.  The description of Plaintiff Lamothe's negotiating style as having "forced" the would-be purchaser to make a larger down payment is not actionable as defamation; it is protected rhetorical hyperbole.  *See Greenbelt Cooperative Publishing Association, Inc. v. Bresler*, 398 U.S. 6, 14 (1970) ("It is simply impossible to believe that a reader who reached the word 'blackmail' in either article would not have understood exactly what was meant:  it was Bresler's public and wholly legal negotiating proposals that were being criticized . . . . [E]ven the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable.").  The allegation in paragraph 17(g) does not state a claim for defamation.

### 8.      Paragraph 17(h).

This paragraph alleges that the September 23 article [DE 62-3] contains the "false and defamatory statement that Baker's telecommunications companies are 'under federal investigation that could lead to legal proceedings.'"  The actual statement, in its entirety, says:

"Several telecommunications companies owned by Laurent Lamothe jointly with Michel Martelly and Patrice Baker are under federal investigation that could lead to legal proceedings."

There are no allegations in the TAC regarding what is false about that statement. Is Plaintiff Baker claiming that investigations are, in fact, underway, but he does not own any of the companies under investigation? Notably, Plaintiff Lamothe has not joined this allegation to challenge the statement that companies he owns are under investigation. Or, is Plaintiff Baker claiming that there are no investigations pending at all? If that were the case, then Plaintiff Lamothe seemingly would have joined this allegation. Or, is Plaintiff Baker claiming that he does not jointly own any companies with Plaintiff Lamothe? The bottom line is that *Iqbal* and *Twombly* require Plaintiffs to plead facts as to why the statement is false. Paragraph 17(h) does not state a claim for defamation because Plaintiffs have not identified the allegedly false statement of fact.

Additionally, Plaintiffs do not allege any facts as to why this statement is defamatory. The statement reports that companies are under investigation. It does not say that Plaintiff Baker is under investigation, or that the investigation of the companies was caused by Plaintiff Baker's conduct. Paragraph 17(h) does not state a claim for defamation because the challenged statement is not defamatory.

**9.     Paragraph 17(i).**

This paragraph alleges that the September 23 article contains the "false and defamatory statement that Baker and Lamothe conspired to structure the transfer of corporate ownership in Telco Equipment & Support Services, Inc. in order to evade income taxes." That is not what the statement says. The actual statement is:

> As a result of the last share transfer made by Lamothe, 50% of the shares he held in TESS were transferred to his partner Baker. For the time being, Baker directly holds 100% of the shares of TESS and 50% of the shares of One World Telecom.

> The federal authorities are looking into the timing of these operations in order to establish if the transfer was made after Laurent Lamothe became Prime Minister. The investigations are taking a very close look at all the operations carried out in the companies created by Lamothe in order to establish if they were inspired by a concern to evade taxes.

Thus, contrary to what Plaintiffs wrote in the TAC, this passage does not state that Plaintiffs entered into a conspiracy to do anything, including to evade taxes. Instead, it states that federal authorities are looking into the timing of the specific transfer identified in the passage to determine "*if* the transfer was made after Laurent Lamothe became Prime Minister" (emphasis added). That is *not* a statement Plaintiffs Baker and Lamothe conspired to commit tax evasion. It also states – without any reference to Plaintiff Baker – that the investigations are looking at "operations carried out in the companies created by Lamothe in order to establish *if* they were inspired by a concern to evade taxes" (emphasis added). That is *not* a statement that Plaintiffs Baker and Lamothe conspired to commit tax evasion. Paragraph 17(i) does not state a claim for defamation because the actual statement does not say that Plaintiffs Baker and Lamothe conspired to evade taxes.

**10.     Paragraphs 17(j) and (k).**

These paragraphs allege that two statements contained in the January 16 article [DE 62-4] are false and defamatory. Because these statements are contained in the same passage, they will be addressed together here. Paragraph 17(j) alleges that the article contains the "false and defamatory statement that Lamothe 'bribed a large majority in the Senate and Chamber of Deputies." Paragraph 17(k) alleges that the article contains the "false and defamatory statement that Lamothe resorted corruption to secure contracts for Global Voice." The actual and complete passage is:

> It was no secret – and Senator Anacacis spelled it out clearly – that Mr. Lamothe had bribed a large majority in the Senate and Chamber of Deputies. Having resorted to

13

corruption, a tactic he used in several African states to secure contracts for Global Voice, the telecommunications company he owns, he wanted his nomination ratified by both houses today.

These statements are not actionable because they are fair and accurate reports of information received from government officials.  *See Woodard v. Sunbeam Television Corp.*, 616 So.2d 501, 502 (Fla. 3d DCA 1993); *Ortega v. Post-Newsweek Stations, Florida, Inc.*, 510 So.2d 972, 977 (Fla. 3d DCA 1987); *Huszar v. Gross*, 468 So.2d 512, 515-16 (Fla. 1st DCA 1985); *Stewart v. Sun Sentinel Co.*, 695 So.2d 360, 362 (Fla. 4th DCA 1997).  This privilege applies even if the information received from the official is erroneous; and the press has no duty to determine the accuracy of the information before publishing fair and accurate reports of it.  *See Woodard*, 616 So.2d at 502-03; *Ortega*, 510 So.2d at 976.

This passage reports what Senator Anacacis said about Plaintiff Lamothe, and identifies the senator as the source of the information.  There is no allegation in the TAC that Senator Anacacis did not say what the passage attributes to him, or that the passage does not accurately describe the information received from Senator Anacacis.  Paragraphs 17(j) and (k) do not state a claim for defamation because the statements are fair and accurate reports of information received from a government official.

## D.    PLAINTIFFS HAVE NOT SUFFICIENTLY PLEADED ACTUAL MALICE.

Regardless of whether Plaintiffs can proceed on all or just some of the statements mentioned in paragraph 17 of the TAC, they must allege that Defendant published the statements with constitutional actual malice, which is a subjective standard requiring Defendant to have published the statements with knowledge of their falsity or with reckless disregard of the truth.  *See, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342-43 (1974); *Mile Marker, Inc. v. Petersen Publishing, LLC*, 811 So.2d 841, 845 (Fla. 4th DCA 2002); *Zorc v. Jordan*, 765 So.2d 768, 771 (Fla. 4th DCA 2000); *Palm Beach Newspapers, Inc. v. Early*, 334 So.2d 50, 51-52 (Fla.

4th DCA 1976); *Garrison v. State of Louisiana*, 379 U.S. 64, 73 (1964) ("utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth").

Plaintiffs' *sole* theory of actual malice in the SAC – which they were not given leave to change in the TAC – was that Defendant published the challenged statements with subjective and actual knowledge of their falsity.  Plaintiffs did *not* allege that Defendant published the statements with reckless disregard of the truth.  To that end, Plaintiffs alleged in paragraph 19 of the SAC that "Defendant also has knowledge of the falsity of the statements by way of his relationship, that being of a business nature and/or creditor/debtor, with the majority owner of Haitel."

The Court ordered "Plaintiffs under Rule 12(e) to file a more definite statement of the allegation contained in paragraph 19" (Order, p.8).  Plaintiffs have wholly failed to provide the "further factual enhancement" required by the United States Supreme Court and the Court's Order.  *See*, 550 U.S. at 557 (2007).  Conclusory allegations that "Defendant knew" or "has knowledge" of falsity are insufficient in the absence of factual enhancement as to how and why Defendant has actual and subjectve knowledge of falsity.  *See Losey v. Warden*, 2013 WL 2450736 at *2 (11th Cir. 2013) (conclusory allegations of a defendant's "subjective knowledge . . . [are] not afforded the presumption of truth absent some factual support to make them plausible").

**1.**      **Plaintiff Baker Is A Public Figure**.

There is a threshold issue relating to Plaintiff Baker's status for the purposes of a defamation claim.  In its Order (p.2 & n.6), the Court questioned whether Plaintiff Baker is public figure, and said that if Defendant were to raise the issue of actual malice in a subsequent motion to dismiss, then he would have to explain why Plaintiff Baker is a public figure.

According to the Republic of Haiti's Internet website for the Miami consulate (www.consulathaitimiami.ht/consul-general/le-personnel), Plaintiff Baker is the Consul for Commercial Affairs (Exhibits 2 & 3). Although Plaintiff Baker chose not to mention his government status in the TAC, Fed.R.Evid. 201(d) permits the Court, at any stage of the proceedings, to take judicial notice of public records, including information contained on government websites.[8] *See, e.g., Universal Express, Inc. v. United States Securities and Exchange Commission*, 177 F. App'x 52, 53 (11th Cir. 2006) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. Public records are among the facts that a district court may consider.") (internal citation omitted); *Daniels-Hall v. National Education Association*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information [a list "displayed publicly" on school districts' websites], as it was made publicly available by government entities (the school districts), and neither party disputes the authenticity of the websites or the accuracy of the information displayed therein.") (motion to dismiss); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (same); *Coleman v. Dretke*, 406 F.3d 665, 667 (5th Cir. 2005) (same); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (same); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224 (10th Cir. 2007) (same); *Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, __ F.Supp.2d __, 2012 WL 5392626 at *3 (N.D. Cal. 2012) (same) (motion to dismiss); *In re: Katrina Canal Breaches Consolidated Litigation*, 533 F.Supp.2d 615, 632 (E.D. La. 2008) (same and collecting decisions) (motion to dismiss).

---

[8] To the extent a formal request is necessary, Defendant hereby requests, pursuant to Fed.R.Evid. 201(c)(2) and (d), that the Court take judicial notice of the fact that Plaintiff Baker is the Consul for Commercial Affairs.

Thus, in light of his position with the Haitian government, Plaintiff Baker is a public official, a general purpose public figure or, at the very least, a limited-purpose public figure with respect to business dealings and commercial affairs.

### 2.    Plaintiffs' Attempt To Plead Actual Malice Still Fails.

Paragraphs 18, 19, and 20 of the TAC are Plaintiffs' attempt to provide further factual enhancement for the allegation in the SAC that "Defendant also has knowledge of the falsity of the statements by way of his relationship, that being of a business nature and/or creditor/debtor, with the majority owner of Haitel."  None of those paragraphs, however, is sufficient to allege actual malice.

#### i.    Paragraph 18

Paragraph 18 alleges:

18. Defendant has knowledge that the above-referenced statements are false and acknowledged their falsity during a teleconference with various third-parties at or around the time that this action was first filed.  Defendant's knowledge as to the falsity of the statements comes, in part, from his relationship, that being of a business nature and/or creditor/debtor, with Franck Cine, majority shareholder of Haitel.

With respect to the first sentence of paragraph 18, it fails to allege actual malice because it focuses on the wrong period of time.  "'The test of actual malice . . . focuses on the defendant's state of mind *at the time of publication*.'"  *See Hunt v. Liberty Lobby*, 720 F.2d 631, 647 (11th Cir. 1983) (quoting *Long v. Arcell*, 618 F.2d 1145 (5th Cir. 1980)) (emphasis added); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 261-62, 286 (1964) ("The [defendant's] statement does not indicate malice at the time of publication . . . .")*; Danwala v. Houston Lighting & Power Co.*, 14 F.3d 251, 255 (5th Cir. 1993) ("The focus [of the actual malice inquiry] is on Wellborn's state of mind at the time of publication.").

The first sentence says *nothing* about Defendant's state of mind at the time he published the challenged statements.  It says only that *after* the statements were published, Defendant

17

acknowledged their falsity during a telephone conference with unidentified people, but that is not an allegation Defendant knew the statements were false at the time he published them. Indeed, the fact that a publisher admits or corrects falsity after publication does not mean the publisher knew of the falsity at the time of publication. *See, e.g., Bose Corp. v. Consumers Union of the United States*, 466 U.S. 485, 512 (1984) (the publisher's attempt to rationalize the falsity "failed, but the fact that he made the attempt does not establish that he realized the inaccuracy at the time of publication"); *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1238 n.22 (11th Cir. 1999) ("While these corrections may be relevant to the issue of damages, the fact that ABC made them does not constitute clear and convincing evidence ABC acted with actual malice at the time it broadcast its report.").

The bottom line is that Plaintiffs would have needed to allege (with sufficient factual detail) that Defendant admitted to knowing that the statements were false *at the time he published them*. No such allegation appears in the TAC. An allegation that Defendant acknowledged falsity after the statements were published – without any allegation relating to whether his knowledge of falsity existed at the time of publication or was acquired only after publication – is irrelevant and insufficient.

The <u>second</u> sentence of paragraph 18 – which, except for identifying Franck Cine as the majority shareholder of Haitel, merely repeats paragraph 19 of the SAC – fares no better. Plaintiffs say that Defendant has a business/creditor/debtor relationship with Mr. Cine, but they do not allege *why* that means Defendant had knowledge of the statements' alleged falsity at the time of publication (nor do they identify the statements in paragraph 17 to which this sentence corresponds). The notion that Defendant somehow should have known of the alleged falsity because he has a relationship with Mr. Cine is an allegation of negligence that is insufficient to plead actual malice. *See, e.g., Meisler v. Gannett Co., Inc.*, 12 F.3d 1026, 1030 (11th Cir. 1994)

18

("[a]t best, the defendants' actions were negligent; negligence is not the appropriate standard for proving actual malice"); *Herbert v. Lando*, 596 F.Supp. 1178, 1187 (S.D.N.Y. 1984) *affirmed in part and reversed in part on other grounds* 781 F.2d. 298 (2d Cir. 1986); *F&J Enterprises, Inc. v. Columbia Broadcasting Systems, Inc.*, 373 F.Supp. 292, 299 (N.D. Ohio 1974) ("The test is not whether a defendant would have or should have known, but rather whether the defendant did in fact have knowledge of falsity . . . and did in fact make a statement with calculated falsehood.").

Paragraph 18 of the TAC does not allege actual malice.

### *ii.     Paragraphs 19 and 20.*

Plaintiffs allege:

19. Defendant has acknowledged that his false statements were made as a result or in part satisfaction of the outstanding debt between himself and Franck Cine.

20. Defendant has acted with actual malice by utilizing his publication to publish statements which benefit him and his business partners/creditors while having knowledge as to their falsity.

These paragraphs relate to an alleged motive for publication: that Defendant published the statements in order to satisfy a debt he owed to Mr. Cine or otherwise further his and partners' or creditors' financial interests.  Plaintiffs' reliance upon motive is misplaced because they are confusing constitutional actual malice with express or common law malice.

"Actual malice," which under federal constitutional law must be shown before a public official or public figure may recover for defamation relating to a matter of his official conduct or of public concern, consists of knowledge of falsity or reckless disregard of truth or falsity, and must be shown by clear and convincing evidence.  Express malice under the common law of Florida, necessary to overcome the common-law qualified privilege, is present where the primary motive for the statement is shown to have been an intention to injure the plaintiff.

*See Nodar v. Galbreath*, 462 So.2d 803, 806 (Fla. 1985); *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510-11 (1991) (citing *New York Times Co. v. Sullivan*, 376 U.S.

254 (1964)) ("Actual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will."); *Herbert v. Lando*, 441 U.S. 153, 199 (1979) (Stewart, J., dissenting) (citing *New York Times*, 376 U.S. 254)):

> Although I joined the Court's opinion in *New York Times*, I have come greatly to regret the use in that opinion of the phrase "actual malice." For the fact of the matter is that "malice" as used in the *New York Times* opinion simply does not mean malice as that word is commonly understood. In common understanding, malice means ill will or hostility, and the most common question in determining whether a person's action was motivated by actual malice is to ask "why." As part of the constitutional standard enunciated in the *New York Times* case, however, "actual malice" has nothing to do with hostility or ill will, and the question of why is totally irrelevant.

Plaintiffs' allegations regarding why they think Defendant published the challenged statements are not allegations of actual malice because they do not address whether Defendant had actual knowledge of the statements' supposed falsity at the time he published them. Additionally, the conclusory reference in paragraph 20 to "publish[ing] statements . . . while having knowledge as to their falsity" is, in and of itself, not a well-pleaded factual allegation regarding Defendant's subjective knowledge, and there is no factual enhancement elsewhere in the TAC supporting that conclusory statement. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557, 570 (2007); *Berzain*, 654 F.3d at 1153; *Losey*, 2013 WL 2450736 at *2 (conclusory allegations of a defendant's "subjective knowledge . . . [are] not afforded the presumption of truth absent some factual support to make them plausible").

### III.    CONCLUSION

For these reasons, the TAC should be dismissed with prejudice.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Defendant
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)


By: /s/ Scott D. Ponce
Sanford L. Bohrer (FBN 160643)
Scott D. Ponce (FBN 0169528)
Jonathan D. Stratton (FBN 93075)
Pedro Gassant (FBN 99771)
Eric B. Funt (FBN 102190)
Email: sbohrer@hklaw.com
Email: sponce@hklaw.com
Email: jonathan.stratton@hklaw.com
Email: pedro.gassant@hklaw.com
Email: eric.funt@hklaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of June 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System.


/s/ Scott D. Ponce

#23624379_v1

21